No. 32,137

ROY HORN, Claimant, *Appellant*, v. ELM BRANCH COAL COMPANY, *Respondent*, CONSOLIDATED UNDERWRITERS, T. H. MASTIN AND COMPANY, Insurance Carrier, *Appellees* and *Cross Appellants.*

(41 P. 2d 751)

Opinion filed March 9, 1935.

*Sylvan Bruner* and *Walter T. Davis,* both of Pittsburg, for the appellant.

*P. E. Nulton* and *G. L. Stevenson,* both of Pittsburg, for the appellees and cross appellants.

The opinion of the court was delivered by

BURCH, J.: The proceeding was one for compensation to a shot firer in the coal mine of his employer, for total and permanent disability occasioned by premature explosion of a shot. Claimant was denied awards for certain items for which he contended, by both the compensation commissioner and the district court. The compensation commissioner awarded compensation, based on weekly wages of $19.20, the sum which claimant was receiving when injured. The district court computed the weekly wages as being $21.42. The employer's insurance carrier was joined. All parties appeal.

The accident occurred February 21, 1933. While claimant was undergoing treatment after injury, it was recommended that he should have his teeth removed. Nineteen teeth, all claimant had,

were extracted, and his condition improved. Claimant contended he should be allowed $50 for a new set of false teeth, but no award for that purpose was made. When the accident occurred, claimant had two false teeth attached to a plate. The teeth were knocked from the plate. There was no other injury to teeth. Claimant already had decayed and infected teeth. There was no evidence that any of the teeth extracted became decayed or infected as a result of the accident, and there was no basis in the evidence to sustain a claim for the cost of a new set of false teeth.

Part of claimant's treatment after injury consisted of removal of one eye. After removal had been recommended, claimant asked a physician of claimant's own choice to examine him, and the physician charged claimant $10 for the examination. Claimant demanded reimbursement. The employer fully performed its statutory duty to provide physicians and surgeons to cure claimant and relieve him from effects of his injury. No dissatisfaction with their services was manifested, and there was no basis in law for charging to the employer the fee of the physician whom the claimant voluntarily consulted. (R. S. 1931 Supp. 44-510.)

Claimant wanted an allowance of $100 for future medical treatment. The claim for compensation stated claimant had requested the employer to furnish medical attention and the employer had done so. The sum paid by the employer for hospital services, for services of physicians and surgeons and for medicines is not disclosed by the record. So far as appears, the amount may have exceeded the statutory limit. There was no showing which called for exercise of the compensation commissioner's discretion in extreme cases (R. S. 1931 Supp. 44-510), and this court has no authority to make any order in the premises.

Claimant was awarded compensation by the compensation commissioner at the rate of $11.52 per week, or sixty per cent of the weekly wage of $19.20. The district court made a slightly larger allowance. Claimant contends he should have been awarded $18 per week. The statute under which the allowance was made was R. S. 1931 Supp. 44-511 (a), relating to continuous employment by the same employer for a year or more. Claimant invoked subdivision (b) of the same section, relating to employment for less than a year, and introduced evidence accordingly.

Claimant was employed by the coal company as a shot firer in

January, 1930. He continued in active service as a shot firer until April 1, 1932. He was then laid off, because the company commenced mining soft coal, which did not require service of a shot firer. On November 28, 1932, the coal company again reached and commenced to mine hard coal. Claimant returned to work and worked as a shot firer until the accident occurred on February 21, 1933. Before claimant was laid off he received the union scale of wages, $5.20 per day. In March, 1932, the coal company discontinued paying wages according to union scale, and paid $3.20 per day, which was the wage claimant received from November, 1932, to date of accident. During the period from April 1 to November 28, 1932, claimant himself considered he was the coal company's regular shot firer. The coal company considered claimant was subject to call, and claimant would have been called if needed. Claimant was needed on November 28, was called, and went to work. During the period he was not working, claimant went to the coal company several times to see if he were needed, and told the coal company that as soon as there was work, to call him. He testified that while he was off, he was subject to call at any time, and that as soon as there was work, he was called.

The facts which have been narrated warranted an inference claimant had been continuously employed by the coal company for more than a year, but he did not work all the time, for the unavoidable cause, the coal company was mining soft coal part of the time. This was the interpretation placed on the facts by the compensation commissioner and the district court. It was the function of the compensation commissioner and the district court to deal with the evidence, and this court is not authorized to interfere.

The computation of weekly wages made by the compensation commissioner took into account the wages claimant was receiving when he was injured; but did not take into account the higher wages claimant received before he was laid off. The district court considered the higher wages, and its computation is approved.

The judgment of the district court is affirmed.